(14)
1/29/0...
lp...

DMB:MEH:mel:2000V0090124

FILED
WILLIAMSPORT, PA

JAN 2 9 2001

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT LEON BUCKNER, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Civil No. 1:CV-00-1594 |
| | : | (Caldwell, J.) |
| DR. ANTHONY BUSSANICH, M.D., | : | |
| and DONALD ROMINE, Warden, USP, | : | |
| Defendants | : | |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

DAVID M. BARASCH
United States Attorney

MATTHEW E. HAGGERTY
Assistant U.S. Attorney
MICHELE E. LINCALIS
Paralegal Specialist
316 Federal Building
240 West Third Street
Williamsport, PA 17703

Dated: January 29, 2001

# **Table of Contents**

I.    Procedural History . . . . . . . . . . . . . . . . 1

II.   Statement of Facts . . . . . . . . . . . . . . . . 2

III.  Question Presented . . . . . . . . . . . . . . . . 4

IV.   Argument . . . . . . . . . . . . . . . . . . . . . 4

    A.    Buckner Intentionally Failed to Exhaust His
         Administrative Remedies; Furthermore, he defaulted
         On His Administrative Remedy, Thus, Barring His
         Claim . . . . . . . . . . . . . . . . . . . . . 5

         1.    Exhaustion . . . . . . . . . . . . . . . . 5

         2.    Procedural Default . . . . . . . . . . . . 17

V.    Conclusion . . . . . . . . . . . . . . . . . . . . 20

## Table of Authorities

**Cases:**

Ahmed v. Sromovski,

    103 F. Supp. 838 (E.D. Pa. 2000) . . . . . . 11, 12, 13, 15

ALA, Inc. v. CCAIR, Inc,

    29 F.3d 855 (3d Cir. 1994) . . . . . . . . . . . . . . 4

Beeson v. Fishkill Correctional Facility,

    28 F. Supp. 2d 884 (S.D.N.Y. 1998) . . . . . . . . . . 10

Booth v. Churner,

    206 F.3d 289 (3d Cir.), cert. granted,

    ___ U.S. ___, 121 S. Ct. 377 (Oct 30, 2000) . . . 9-11, 15

Boyd v. Department Of Corrections,

    2000 WL 1073324 (E.D. Pa. 2000) . . . . . . . . . . . 19

Caswell v. Ryan,

    953 F.2d 853 (3d Cir. 1992) . . . . . . . . . . . . . 19

Conley v. Gibson,

    355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . 4

Davis v. United States,

    411 U.S. 233 (1973) . . . . . . . . . . . . . . . . . 18

Garrett v. Hawk,

    127 F.3d 1263 (10th Cir. 1997) . . . . . . . . . . . . 9

Ghana v. Holland,

    226 F.3d 175 (3d Cir. 2000) . . . . . . . . . . . . . 9

Hill v. Jones,

    211 F.3d 126 (Table),

    2000 WL 571948 (6th Cir. 2000) . . . . . . . . . . . . . 15

Lavigne v. Zoda,

    No. 4:CV-98-0703, slip op.,

    (M.D. Pa., Oct. 19, 2000) . . . . . . . . . . 11, 16, 20

Lyons v. United States Marshals Service,

    840 F.2d 202 (3d Cir. 1988) . . . . . . . . . . . . . 16

Marsh v. Jones,

    53 F.3d 707 (5th Cir. 1995) . . . . . . . . . . . . . . 19

Martin v. Hadix,

    527 U.S. 343 (1999) . . . . . . . . . . . . . . . . . . 9

Massey v. Helman,

    196 F.3d 727 (7th Cir. 1999) . . . . . . . . . . . . . 10

Miller v. Tanner,

    196 F.3d 1190 (11th Cir. 1999) . . . . . . . . . . . 12

Mortensen v. First Federal Sav. and Loan Ass'n,

    549 F.2d 884 (3d Cir. 1977) . . . . . . . . . . . . . . 2

Moscato v. Federal Bureau of Prisons,

    98 F.3d 757 (3d Cir. 1996) . . . . . . . . . . . 14, 17-20

Nigro v. Sullivan,

    40 F.3d 990 (9th Cir. 1994) . . . . . . . . . . . . . 20

Nyhuis v. Reno,

    204 F.3d 65 (3d Cir. 2000) . . . . . . . . . . . 9-13, 15

Pennsylvania House, Inc. v. Barrett,

    760 F. Supp. 439 (M.D. Pa. 1991) . . . . . . . . . . . 4

Perez v. Wisconsin Department of Corrections,

    182 F.3d 532 (6th Cir. 1999) . . . . . . . . . . . 15, 16

Ridenour v. Davis,

    229 F.3d 1153, (Table),

    2000 WL 1175368 (6th Cir., Aug. 11, 2000) . . . . . . . . 9

Robinson v. Dalton,

    107 F.3d 1018 (3d Cir. 1997) . . . . . . . . . . . . . . 2

Rojas v. Williams,

    No. 92-1514, slip op., (M.D. Pa., May 27, 1993) . . . 16-17

Sanchez v. Miller,

    792 F.2d 694 (7th Cir. 1986) . . . . . . . . . . . 18, 20

Thaddeus-X v. Wozniak,

    215 F.3d 1327 (Table),

    2000 WL 712383 (6th Cir., May 23, 2000) . . . . . . . . 9

Underwood v. Wilson,

    151 F.3d 292 (5th Cir. 1998) . . . . . . . . . . . 14-16

Veteto v. Miller,

    794 F.2d 98 (3d Cir. 1986) . . . . . . . . . . . . . 16

Wolff v. Moore,

    199 F.3d 324 (6th Cir. 1999) . . . . . . . . . . . . 12

Wright v. Morris,

    111 F.3d 414 (6th Cir. 1997) . . . . . . . . . . . . 19

<u>Wyatt v. Leonard</u>,

    193 F.3d 876 (6th Cir. 1999) . . . . . . . . . . . . . . 12

<u>Young v. Quinlan</u>,

    960 F.2d 351 (3d Cir. 1992) . . . . . . . . . . . . . . 16

**FEDERAL STATUTES:**

18 U.S.C. § 4001 (1997) . . . . . . . . . . . . . . . . . . 5

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . 9, 11, 14

42 U.S.C. § 1997 . . . . . . . . . . . . . . . . . . . . . . 9

42 U.S.C. § 1997e(a) (1996) . . . . . . . . . 9-13, 15-16, 19

**FEDERAL RULES & REGULATIONS:**

Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . 2

28 C.F.R. § 542 . . . . . . . . . . . . . . . . . . . . . . 5

28 C.F.R. § 542.10 . . . . . . . . . . . . . . . . . . . . 13

28 C.F.R. § 542.13(a) . . . . . . . . . . . . . . . . . . . 5

28 C.F.R. § 542.14 . . . . . . . . . . . . . . . . . . . . . 6

28 C.F.R. § 542.14(b) . . . . . . . . . . . . . . . . 7, 8, 14

28 C.F.R. § 542.15(a) . . . . . . . . . . . . . . . . . . . 6

28 C.F.R. § 542.16 . . . . . . . . . . . . . . . . . . . . . 6

**MISCELLANEOUS:**

Prison Litigation Reform Act . . . . . . 8-10, 12-13, 15-16, 19

## I.  **Procedural History**

Plaintiff is Robert Leon Buckner, an inmate incarcerated at the Federal Prison Camp in Lewisburg, Pennsylvania ("FPC Lewisburg").  On September 8, 2000, Buckner initiated this <u>Bivens</u> cause of action against Donald Romine, Warden, and Anthony Bussanich, M.D., Chief Medical Officer.  Buckner seeks monetary and injunctive relief based on the Defendants' alleged refusal to provide proper treatment for his Meniere's disease. Specifically, Buckner requests punitive and compensatory damages against the named Defendants and that he immediately resume his medical "regimen" of the drug clonazepam. (See Compl. at 3, ¶¶ 8, 10.)

Buckner's complaint was originally dismissed on September 28, 2000, without prejudice, for failure to exhaust administrative remedies.  However, upon consideration of a motion by Buckner, the case was reopened on November 8, 2000, and service of process was ordered "to explore whether a prisoner can maintain a cause of action after he has perhaps *inadvertently* defaulted on his administrative remedies."  (Order dated November 8, 2000, at 2.)(Emphasis added.)

On January 12, 2001, a motion to dismiss was filed on behalf of the Defendants.  This brief is submitted in support of that motion in accordance with M.D. Pa. Local Rule 7.5.

1

## II.  **Statement of Facts**

Buckner was committed to federal custody on April 4, 2000.
(Exh. 1 at 4.[1])  On April 5, 2000, his case manager at FPC
Allenwood discussed with him the Bureau of Prisons'
Administrative Remedy Program.  Buckner's signature on Form BP-
5597.053, "Unit Admission And Orientation Program Checklist,"
clearly indicates Buckner was oriented and had an opportunity to
discuss the Administrative Remedy Program with his unit team.
(Id. at 7.)

On April 26, 2000, the Camp Administrator discussed the
Administrative Remedy Program with Buckner.  Buckner's signature
on Form BP-5518.052, "Admission And Orientation Program
Checklist," clearly indicates he attended all classes of the
admission and orientation program and received information
regarding the Administrative Remedy Program.  (Id. at 9-9A.)

On July 21, 2000, Buckner submitted a completed "Informal
Resolution Attempt" form to staff expressing his dissatisfaction
with the reduction and eventual discontinuation of Klonopin as
treatment of his Meniere's disease.  (Id. at 16.)  In response,

---

[1] Defendants have submitted evidentiary materials in
conjunction with their Rule 12(b)(1) motion to dismiss.  Where a
defendant moves for dismissal based on lack of subject matter
jurisdiction, the Court is permitted to consider additional
evidentiary materials in determining whether subject matter
jurisdiction exists without converting the motion to one for
summary judgment.  Robinson v. Dalton, 107 F.3d 1018, 1021 (3d
Cir. 1997) (quoting Mortensen v. First Federal Sav. and Loan
Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

the Acting Assistant Health Services Administrator explained to
Buckner that "Clonazepam (Klonopin) is **NOT** the treatment of choice
for 8th nerve damage nor it is [sic] the drug of choice for
Meniere's disease." (Id. at 15 (emphasis in original).) The
response also provided information regarding the recommended
course of treatment for Buckner's dizziness and Meniere's
disease. (Id.)

On August 3, 2000, Buckner submitted a Request for
Administrative Remedy to Warden Romine asking that treatment of
his Meniere's disease with Clonazepam be continued. (Id. at 11-
13.) In a response dated August 24, 2000, Buckner was informed
that Bureau of Prisons' treatment guidelines require patients
arriving with a current treatment regimen of Clonazepam to be
tapered from the drug, with substitution of a non-benzodiazepine
if clinically indicated. It was also noted that the psychiatrist
at the United States Medical Center for Federal Prisoners
recommended completely discontinuing Buckner from receiving the
drug Clonazepam over the course of one month. Buckner's
medication was being slowly tapered over the course of four
months. Buckner was informed that if an anti-anxiety agent is
required, then one other than benzodiazepine would be added.
Based on this information, Buckner's request for relief was
denied. Buckner was informed that he had twenty (20) calendar
days to appeal to the Regional Office if he was dissatisfied with

3

the Warden's response.  (Id. at 14.)  However, within four days

of the date of the Warden's denial, Buckner submitted the instant

complaint to the Court for filing.  According to Bureau of

Prisons' computerized records, Buckner never submitted either a

Regional Administrative Remedy Appeal to the Regional Office or

an Administrative Remedy Appeal to the Central Office. (Id. at

19.)

### III.   Question Presented

Should the complaint be dismissed for Buckner's failure to

exhaust the Bureau of Prisons' Administrative Remedy Procedure

for Inmates?

Suggested answer in the affirmative.

### IV.   Argument

In evaluating a motion to dismiss, the Court must accept all

material allegations of the complaint as true and construe all

inferences in the light most favorable to the plaintiff.

Pennsylvania House. Inc. v. Barrett. 760 F. Supp. 439, 449 (M.D.

Pa. 1991).  "[C]onclusory allegations of law, unsupported

conclusions and unwarranted inferences need not be accepted as

true."  Id. at 449-50.  A case may be dismissed for failure to

state a claim upon a showing that when all facts alleged by the

plaintiff are interpreted in his favor, the plaintiff has failed

to state facts which would entitle him to relief.  Conley v.

Gibson, 355 U.S. 41 (1957); ALA, Inc. v. CCAIR, Inc, 29 F.3d 855,

4

855, 859 (3d Cir. 1994).  In the present case, even if the Court

takes every fact as pleaded, the governing law still would not

permit this action.  Thus, for the reasons stated below,

Defendants' motion to dismiss should be granted.

**A.    BUCKNER INTENTIONALLY FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES; FURTHERMORE, HE DEFAULTED ON HIS ADMINISTRATIVE REMEDY, THUS, BARRING HIS CLAIM.**

### 1.    Exhaustion

Congress has delegated to the Attorney General, and in turn

to the Bureau of Prisons, wide discretion in promulgating rules

and regulations governing the lives of inmates, including

providing "for their proper government, discipline, treatment,

care, rehabilitation and reformation."  18 U.S.C. § 4001 (1997).

In accordance with this congressional mandate, the Bureau of

Prisons administers an in-house procedure by which prison inmates

may seek formal review of a complaint which relates to any aspect

of their imprisonment.  See 28 C.F.R. § 542.  Under this

administrative procedure, an inmate is advised to initially seek

informal discussion and resolution of their problem(s) with

prison staff.  See 28 C.F.R. § 542.13(a).  If this fails, the

inmate must then follow a more formal set of procedures.

First, the inmate may raise his complaint to the warden of

the institution where he is confined.  An inmate who is not

satisfied with the warden's response may appeal to the Regional

Director within twenty (20) calendar days from the date the

warden signed the response.  28 C.F.R. § 542.15(a).  An appeal of
the Regional Director's decision may then be made to the Central
Office of the Federal Bureau of Prisons.  28 C.F.R. §§ 542.14,
542.15.  No administrative remedy appeal is considered to have
been finally exhausted until considered by the Bureau of Prisons'
Central Office.

When Buckner was not successful at an informal resolution of
his complaints regarding his medical treatment, he properly filed
a formal administrative remedy with the Warden of USP Lewisburg
on August 3, 2000.  (Exh. 1 at 11.)  A response was issued August
24, 2000, informing Buckner that the medical decision had
properly been made pursuant to Bureau of Prisons' treatment
guidelines.  (Id. at 14.)  According to Bureau of Prisons'
records, no further attempt was made to pursue the administrative
remedy process.  (Id. at 19.)  In fact, it is noted that
Buckner's complaint is dated August 28, 2000--only four days
after the date of the Warden's response.

In order for Buckner to have properly appealed the Warden's
response to the Regional Office before filing suit, he would have
been required to file an appeal within twenty (20) calendar days
of the date the Warden signed the response.  See 28 C.F.R. §
542.16.  However, if he could have demonstrated a valid reason
for delay, Buckner could have requested an extension of time to

6

file the appeal.  Title 28 C.F.R. § 542.14(b) defines a valid

reason as the following:

> . . . an extended period in-transit during which the
> inmate was separated from documents needed to prepare
> the Request or Appeal; an extended period of time
> during which the inmate was physically incapable of
> preparing a Request or Appeal; an unusually long period
> taken for informal resolution attempts; indication by
> an inmate, verified by staff, that a response to the
> inmate's request for copies of dispositions requested
> under § 542.19 of this part was delayed.

28 C.F.R. § 542.14(b).

The Court has reinstated this action in order to answer the

question of whether Buckner can maintain a cause of action "after

he has perhaps *inadvertently* defaulted on his administrative

remedies."  (Order dated November 8, 2000, at 2.)  Buckner does

not allege that he was in-transit between institutions, that he

was physically incapable of preparing an appeal, that a long

period was taken for informal resolution, or that he requested

copies which caused a delay for filing an appeal.  Buckner cannot

demonstrate any of the valid reasons set forth in 28 C.F.R.

542.14(b) which would allow him to pursue an administrative

remedy after he failed to meet the established time requirements.

Rather, Buckner argues that the deadline for appealing the

denial of his administrative remedy request has now expired and,

as such, the administrative process is no longer available to

him.  Specifically, Buckner claims his recent requests for the

appeal forms have been denied by prison officials because the

7

twenty-day period has passed.   (Motion to Reconsider Dismissal of
Complaint at 1.)

There is no indication in either Buckner's complaint or in
his motion to reconsider that he ever requested and/or was denied
the appeal forms prior to the twenty-day expiration date.
Buckner was educated on the administrative process *twice* in April
of 2000--less than four months prior to commencing the
administrative remedy process at the institution level.  (See
Exh. 1 at 7, 9.)  He was also informed in the Warden's response
to his administrative remedy request that he had twenty days to
appeal to the Regional Office. (Id. at 14.)  In a blatant
disregard for the administrative policy, however, Buckner sought
judicial intervention within *four days* of the Warden's response.
Buckner never gave prison officials the opportunity to deny him
the forms.  It was not until after he filed his complaint and the
Court dismissed it for lack of exhaustion that he even attempted
to complete the exhaustion requirement.  Buckner willfully, not
"inadvertently," bypassed the administrative process.

On April 26, 1996, four years before Buckner filed suit,
President Clinton signed into law the Omnibus Consolidated
Rescissions and Appropriations Act.  Title VIII of that omnibus
appropriations bill is the Prison Litigation Reform Act of 1995
("PLRA") which contains amendments significantly affecting prison
litigation.  The PLRA became effective on the date of its

8

enactment, <u>Martin v. Hadix</u>, 527 U.S. 343 (1999), and applies to <u>all</u> prisoner complaints filed after that date. <u>Ghana v. Holland</u>, 226 F.3d 175 (3d Cir. 2000); <u>Ridenour v. Davis</u>, 229 F.3d 1153 (Table), 2000 WL 1175368, *2 (6th Cir., Aug. 11, 2000)(copy attached); <u>Thaddeus-X v. Wozniak</u>, 215 F.3d 1327 (Table), 2000 WL 712383, **3 (6th Cir., May 23, 2000)(copy attached); <u>Garrett v. Hawk</u>, 127 F.3d 1263, 1266 (10th Cir. 1997).

As a result of the PLRA, 42 U.S.C. § 1997 now includes a statutory exhaustion requirement which states:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], <u>or any other Federal law</u>, by a prisoner confined in any jail, prison, or other correctional facility <u>until such administrative remedies as are available are exhausted</u>.

42 U.S.C. § 1997e(a) (1996) (emphasis added). Thus, under the PLRA, a federal prisoner is required to exhaust his administrative remedies before filing a complaint. The Third Circuit has held that, "no action shall be brought in federal court until such administrative remedies as are available have been exhausted." <u>Nyhuis v. Reno</u>, 204 F.3d 65, 78 (3d Cir. 2000); <u>Booth v. Churner</u>, 206 F.3d 289 (3d Cir.), <u>cert. granted</u>, ___ U.S. ___ 121 S. Ct. 377 (Oct 30, 2000) (NO. 99-1964).

Prior to the amendment of § 1997e(a), Congress did not *require* exhaustion but rather vested power in the federal courts

9

to make such determinations.  <u>Nyhuis</u>, 204 F.3d at 73.  As

amended, however, § 1997e(a) now eliminates such discretion.  "It

'specifically mandates' that inmate-plaintiffs exhaust their

available administrative remedies, . . . by providing that '[n]o

action shall be brought' until the inmate--plaintiff has done so.

Accordingly, it is beyond the power of this Court--or any other--

to excuse compliance with the exhaustion requirement, whether on

the ground of futility, inadequacy or any other basis."  <u>Id.</u>

(citations omitted).  <u>See also</u> <u>Booth v. Churner</u>, 206 F.3d at 299.

Claims for monetary relief should not be exempted.  To do so

would frustrate the intent of the PLRA.  "It would enable

prisoners, as they became aware of such an exemption, to evade

the exhaustion requirement, merely by limiting their complaints

to request for money damages. . . .   Such a result would do

little to 'stem the tide of meritless prisoner cases' as Congress

intended."   <u>Id.</u> at 74 (quoting <u>Beeson v. Fishkill Correctional</u>

<u>Facility</u>, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

As noted by the Court in its November 8, 2000, Order,

§ 1997e(a) is not a jurisdictional requirement, such that failure

to comply with the section would deprive federal courts of

subject matter jurisdiction.  <u>Nyhuis</u>, 204 F.3d at 69 (citing

<u>Massey v. Helman</u>, 196 F.3d 727, 732 (7th Cir. 1999)).  However,

dismissal of a plaintiff's complaint is appropriate when an

inmate-plaintiff like Buckner has failed to exhaust his available

administrative remedies before bringing an action under § 1983.
Booth, 206 F.3d at 289 n.3, 300 (district court appropriately
dismissed action even though time for plaintiff to cure defect in
complaint is long past); Ahmed v. Sromovski, 103 F. Supp.2d 838,
843 (E.D. Pa. 2000).

It is interesting to note that § 1997e(a) now also precludes
a futility exception to its mandatory exhaustion requirement "in
any case." Nyhuis, 204 F.3d at 71; Booth, 206 F.3d at 300.
"Although it may make sense to excuse exhaustion of the
prisoner's complaint where the prison system has a flat rule
declining jurisdiction over [claims involving only money
damages], it does not make sense to excuse the failure to exhaust
when the prison system will hear the case and attempt to correct
legitimate complaints, even though it will not pay damages." Id.
In Buckner's case, he claims the administrative remedy process is
no longer "available" to him because he is time-barred.  In
Lavigne v. Zoda, No. 4:CV-98-0703, slip op., (M.D. Pa., Oct. 19,
2000)(Muir, J.)(copy attached), Judge Muir determined that the
Court "need not predict the manner in which the Bureau of Prisons
will consider any potential administrative claim filed by
[plaintiff].  The two controlling cases, Booth and Nyhuis,
convince us that the case should be dismissed without prejudice."
Slip op. at 6.)

11

Notwithstanding the mandatory language of the amended
§ 1997e(a), however, the Nyhuis Court noted that compliance with
the administrative remedy scheme will be satisfactory *if it is
substantial.*"  204 F.3d at 77-78 (citing Miller v. Tanner, 196
F.3d 1190, 1194 (11th Cir. 1999)(recognizing and applying the
substantial compliance doctrine); Wyatt v. Leonard, 193 F.3d 876,
879-80 (6th Cir. 1999)(same)).  Buckner's cause of action arose
just this past year.  However, it is only when a prisoner's claim
arose *before* April 26, 1996--the effective date of the PLRA--that
a prisoner must show that he substantially complied with the
exhaustion requirement by making a good faith attempt to reach
the appropriate prison official.  See Wolff v. Moore, 199 F.3d
324, 327 (6th Cir. 1999); Wyatt, 193 F.3d at 880.

Caselaw applying the substantial compliance doctrine in the
PLRA is still developing.  However, in Ahmed v. Sromovski, 103 F.
Supp. 838 (E.D. Pa. 2000), the district court rejected the
plaintiff's argument that although he filed untimely appeals, he
"substantially complied" with the exhaustion requirement.  The
plaintiff did not attempt to appeal the initial determination of
his grievance to the second level (which was returned as
"untimely") and third level of review until five months after
filing his case in court--two days after defendants raised the
exhaustion issue.  In addition to noting the plaintiff's failure
to comply with administrative procedures for filing appeals, the

district court determined the untimely appeals to be contrary to the policy considerations underlying the PLRA's exhaustion requirement and the spirit of Nyhuis. ("The Third Circuit has interpreted § 1997e(a) as establishing a bright line rule; 'we are not prepared to read . . . § 1997e(a) as meaning anything other than what it says--i.e., that no action shall be brought in federal court until such administrative remedies as are available have been exhausted.'" Ahmed, 103 F. Supp. at 844 (quoting Nyhuis, 204 F.3d at 78).)

Buckner may attempt to argue that he "substantially complied" with the Bureau of Prisons' administrative remedy procedure. However, in addition to being barred from doing so because his claim arose *after* April 26, 1996, Bureau of Prisons' records reveal Buckner has only ever filed--or attempted to file--at the first level of the administrative remedy process. (See Exh. 1 at 19.) Thus, to date, Buckner has not even attempted to appeal the Warden's response, and cannot support any claim of substantial compliance.

The Bureau of Prisons' regulations clearly set forth, in specific detail, the proper procedures for filing administrative remedies, including form, deadlines, exceptions, extensions of time, assistance, etc. See 28 C.F.R. § 542.10, et seq. Buckner was apprised of the Bureau of Prisons' Administrative Remedy Procedure for Inmates on April 5, 2000--within one day of his

arrival at USP Lewisburg--and again on April 26, 2000. (Exh. 1 at

7, 9.)  He was therefore fully aware of the policy.

Additionally, Buckner was informed in the Warden's response that

he only had twenty days to appeal to the Regional Office.  (Exh.

1 at 14.)  Buckner knew enough to file the first level of the

administrative process.  There is no excuse for failing to timely

file with the Regional and Central Offices, especially since the

regulations also provide for extensions of time of the filing

deadlines for good cause.  See 28 C.F.R. § 542.14(b).

The exhaustion doctrine has been developed to facilitate

judicial review by allowing the appropriate agency to develop a

factual record and apply its expertise, to conserve judicial

resources, and to follow the defendant agency the first

opportunity to correct its own errors.  See Moscato v. Federal

Bureau of Prisons, 98 F.3d 757 (3d Cir. 1996).  If a federal

prisoner fails to follow the detailed procedures and guidelines

to exhaust his administrative remedies, the action cannot be

maintained.

In Underwood v. Wilson, 151 F.3d 292, 294-95 (5th Cir.

1998), the Fifth Circuit was faced with determining whether the

fact that the inmate plaintiff's administrative remedies were

exhausted after he filed his § 1983 suit, rather than before,

justified dismissal.  Although the court noted the inefficiency

of dismissing the suit and requiring the plaintiff to refile, it

14

affirmed the district court's dismissal, stating that "dismissal
may serve as a deterrent to premature filing by Underwood and
other potential litigants, thus serving the Congressional purpose
of providing relief from frivolous prisoner litigation." 151
F.3d at 296.

In light of Buckner's failure to exhaust his available
administrative remedies, the complaint should be dismissed
without a merits analysis of his claim. <u>Nyhuis v. Reno</u>, 204 F.3d
at 78 (affirming the dismissal of plaintiff's complaint for
failure to exhaust, but vacating that portion of the district
court's opinion addressing the merits of plaintiff's claims
explaining that the Magistrate Judge should not have reached the
merits of plaintiff's action); <u>Booth v. Churner</u>, 206 F.3d at 300;
<u>Hill v. Jones</u>, 211 F.3d 1269 (Table), 2000 WL 571948 (6th Cir.
2000)(before district court adjudicates merits, court must
determine that plaintiff has complied with exhaustion requirement
under PLRA)(copy attached); <u>Perez v. Wisconsin Department of
Corrections</u>, 182 F.3d 532, 534-35 (6th Cir. 1999) ("application
of a law designed to prevent decision on the merits cannot be
avoided . . . ." ); <u>Ahmed v. Sromovski</u>, 103 F. Supp.2d at 843.

Additionally, it should be noted that with the enactment of
the PLRA, a "continuance" of the case pending exhaustion is no
longer an option.

> The version of § 1997e(a) that predated the PLRA
> permitted a court to 'continue such case for a period

15

of not to exceed 180 days in order to require
exhaustion of such plain, speedy, and effective
administrative remedies as are available.'  In 1996
Congress deleted the requirement that the
administrative remedy be 'plain, speedy, and
effective', and when these words left the statute so
did any warrant to inquire whether exhaustion would be
unavailing. . . [T]he difference between the pre-1996
version of § 1997e(a), which allowed a judge to
"continue" the suit, and the PLRA version, which makes
exhaustion a precondition to suit, . . . supports [the
Sixth Circuit's] principal conclusion that a case filed
before exhaustion has been accomplished must be
dismissed.

<u>Perez v. Wisconsin Department of Corrections</u>, 182 F.3d at 537

(citations omitted).  <u>See</u> <u>also</u> <u>Underwood</u>, 151 F.3d at 294.

For these reasons, Buckner's complaint should be dismissed.  See

<u>Lavigne v. Zoda</u>, No. 4:CV-98-0703, <u>slip op.</u>, (M.D. Pa., Oct. 19,

2000)(Muir, J.)(copy attached).

Furthermore, even under settled Third Circuit law decided

prior to the PLRA, an inmate like Buckner who files a <u>Bivens</u>

action seeking more than just money damages must exhaust his

administrative remedies.  <u>Young v. Quinlan</u>, 960 F.2d 351, 356 n.8

(3d Cir. 1992); <u>Lyons v. United States Marshals Service</u>, 840 F.2d

202 (3d Cir. 1988); <u>Veteto v. Miller</u>, 794 F.2d 98, 100 (3d Cir.

1986).  In <u>Rojas v. Williams, et.al.</u>, Civil Action No. 92-1514,

<u>slip</u> <u>op.</u>, (M.D. Pa., May 27, 1993)(copy attached), a <u>Bivens</u>-type

action against USP Lewisburg staff members filed by an inmate for

alleged medical malpractice in which the inmate requested, <u>inter</u>

<u>alia</u>, "any other relief the court deems just," Judge Conaboy held

that the case should be dismissed for "failure to exhaust

administrative remedies as required by law." Slip op. at 12.

Buckner seeks both monetary and injunctive relief. Thus, for

this additional reason, Defendants' motion to dismiss should be

granted.

### 2. **Procedural Default**

Additionally, Buckner is now in procedural default.

Although he contends that he attempted to exhaust his

administrative remedies beyond the first level of the

administrative process, he has not. As evidenced by the

documents provided to the Court, Buckner has never even attempted

to appeal the Warden's response to the Regional Director. (Exh.

1 at 19.) Accordingly, the period for filing is presently

foreclosed. Thus, Buckner is precluded from litigating his

claims in the instant case unless he can demonstrate "cause and

prejudice." See Moscato v. Bureau of Prisons, 98 F.3d 757, 760-

61 (3d Cir. 1996).

In Moscato, a federal inmate filed a habeas petition

regarding a discipline hearing. The Third Circuit determined

that a federal inmate committed procedural default when he failed

to exhaust his administrative remedy by not filing a timely

appeal, and because he could not show cause for the default, his

habeas petition was barred from review on the merits. Moscato,

98 F.3d at 762 (3d Cir. 1996). The Court's decision in Moscato

relied upon a Seventh Circuit opinion which held that a

17

prisoner's procedural default renders the administrative process unavailable, and the habeas claim was barred unless the inmate could demonstrate cause and prejudice.  <u>Moscato</u>, 98 F.3d at 761 (citing <u>Sanchez v. Miller</u>, 792 F.2d 694, 699 (7th Cir. 1986)).

The "cause and prejudice" rule was originally articulated by the Supreme Court in <u>Davis v. United States</u>, 411 U.S. 233 (1973). The Court held that review of petitioner's habeas claim should be barred in the absence of a showing by the prisoner of cause for the failure to comply with procedural requirements and of actual prejudice resulting from the alleged constitutional violation. 411 U.S. at 243-45.  <u>See also</u> <u>Sanchez v. Miller</u>, 792 F.2d 694, 698 (7th Cir. 1986).

In the instant case, Buckner submitted a Request For Administrative Remedy to the Warden, which was answered on August 24, 2000.  Subsequently, on August 28, 2000, four days after receiving his response from the Warden, Buckner filed suit.  He made no attempt to exhaust his available administrative remedy prior to filing suit, even after being informed of the administrative remedy program by two staff members and being instructed in the Warden's response that he needed to appeal to the Regional Office within twenty (20) days.  (Exh. 1 at 14.)

Because the record is clear that Buckner never attempted to exhaust the second and third levels of the administrative process, he cannot show cause for the default.  Since he cannot

18

show cause, the Court need not address the question of actual prejudice.  Moscato, 98 F.3d at 762 (citing Caswell v. Ryan, 953 F.2d 853, 863 (3d Cir. 1992)).

It would be contrary to Congress's intent in enacting the PLRA to allow inmates to bypass the exhaustion requirement by declining to file administrative complaints and then claiming that administrative remedies are time-barred and subsequently not available.  See Wright v. Morris, 111 F.3d 414, 417 (6th Cir. 1997); Boyd v. Department Of Corrections, 2000 WL 1073324 (E.D. Pa. 2000)("if Boyd's administrative remedies are now time-barred, the judgment of the Court [to dismiss the amended complaint with prejudice] will not be affected" as it would go against the intent of Congress).  As such, without the prospect of a dismissal with prejudice, an inmate could evade the exhaustion requirement by filing no administrative remedy or by intentionally filing an untimely one, which would allow an inmate to bypass the administrative remedy process and gain access to a federal court without exhausting their available administrative remedy.  Marsh v. Jones, 53 F.3d 707, 710 (5th Cir. 1995) Specifically, the Marsh Court held that, a "[d]istrict Court could dismiss a prisoner's section 1983 suit under § 1997(e) even when administrative relief is time-barred or otherwise precluded." Marsh, 53 F.3d at 710.

19

Buckner has failed to timely exhaust the Bureau of Prisons' administrative remedy procedure, thereby constituting procedural default on his part and mandating dismissal of the complaint for failure to exhaust.  See Moscato, 98 F.3d at 760-61; Nigro v. Sullivan, 40 F.3d 990 (9th Cir. 1994); Sanchez v. Miller, supra. But see Lavigne v. Zoda, supra (the principle of a "procedural default" does not apply in a civil rights action for damages). Therefore, Buckner's complaint should be dismissed with prejudice.

### V.  Conclusion

For the reasons stated above, Defendants' motion to dismiss should be granted with a certification that any appeal would be deemed frivolous, lacking in probable cause, and not taken in good faith.

Respectfully submitted,

DAVID M. BARASCH
United States Attorney

*Matthew E. Haggerty* wrs

MATTHEW E. HAGGERTY
Assistant U.S. Attorney
MICHELE E. LINCALIS
Paralegal Specialist
316 Federal Building
240 West Third Street
Williamsport, PA  17703

Dated: January 29, 2001

229 F.3d 1153 (Table)
**Unpublished Disposition**

Page 1

**(Cite as: 229 F.3d 1153, 2000 WL 1175368 (6th Cir.(Ohio)))**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter.  Use FI CTA6 Rule 28 and FI CTA6 IOP 206 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Sixth Circuit.

William L. RIDENOUR, Plaintiff-Appellant,
v.
Donald DAVIS; Brian Wittrup; Tami Marvin; Kevin Scott, Defendants-Appellees.

No. 99-4185.

Aug. 11, 2000.

Before KEITH, SILER, and BATCHELDER, Circuit Judges.

ORDER

**\*\*1** William L. Ridenour, a pro se Ohio prisoner, appeals a district court judgment dismissing his civil rights complaint filed pursuant to 42 U.S.C. § 1983. This case has been referred to a panel of the court pursuant to Rule 34(j)(1), Rules of the Sixth Circuit. Upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

Seeking monetary, declaratory, and injunctive relief, Ridenour sued multiple prison officials contending that the defendants retaliated against him for exercising his right of access to the courts and of access to the prison's grievance procedures. The district court dismissed all but two of Ridenour's allegations for failure to exhaust available prison administrative remedies. As to the remaining two allegations, the district court noted that these claims did not result in any prejudice. Therefore, the district court granted summary judgment to the defendants.

In his timely appeal, Ridenour argues that he did exhaust his available administrative remedies, that the district court should have allowed him to amend his complaint, and that the Prison Litigation Reform Act (PLRA) should not have been applied to him as he was incarcerated prior to the enactment of the statute.

The district court's judgment is reviewed de novo.

See Rowley v.. United States, 76 F.3d 796, 799 (6th Cir.1996).

Upon review, we conclude that the district court properly dismissed Ridenour's complaint for failure to exhaust available administrative remedies. In Brown v. Toombs, 139 F.3d 1102, 1104 (6th Cir.1998), we held that inmates who file lawsuits in federal court challenging the conditions of their confinement pursuant to § 1983 must allege and show that they have exhausted all available state administrative remedies. A prisoner should attach to his § 1983 complaint the administrative decision, if available, showing the administrative disposition of his complaint. Id. When the record fails to disclose that the inmate has complied with the exhaustion requirements, the case should be dismissed without prejudice. Id.

Ridenour filed no documentation with his complaint showing that he exhausted his claims. Although Ridenour did file documents in response to the defendants' motion for summary judgment, these documents do not establish that Ridenour exhausted his available administrative remedies as to every claim raised. The district court correctly noted that the only issues which had completed the entire grievance process were Ridenour's complaint concerning the availability of notary services in one of the prison's dormitories and his complaint regarding the procedure for obtaining copies of documents for lawsuits. However, as the district court noted, these issues did not state a cause of action as Ridenour failed to allege any prejudice. See Pilgrim v. Littlefield, 92 F.3d 413, 415-16 (6th Cir.1996). Thus, the district court did not err in dismissing the complaint under Brown.

**\*\*2** Ridenour also argues that the district court should have allowed him to amend his complaint. The proposed amendment added new defendants that Ridenour asserted participated in the conspiracy alleged in his original complaint. However, as the complaint was dismissed under Brown, Ridenour is free to bring a new cause of action against the proposed defendants. The district court did not err in denying Ridenour leave to amend his complaint.

Finally, Ridenour contends that the PLRA is not applicable as he was incarcerated prior to the enactment of the statute. However, the statute is applicable to all cases filed on or after April 26,

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

1996, the effective date of the statute. See Brown, 139 F.3d at 1104. The argument is meritless.

Accordingly, we affirm the district court's judgment Rule 34(j)(2)(C), Rules of the Sixth Circuit.

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

(Cite as: 215 F.3d 1327, 2000 WL 712383 (6th Cir.(Mich.)))
**H**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA6 Rule 28 and FI CTA6 IOP 206 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Sixth Circuit.

THADDEUS-X, Plaintiff-Appellant,

v.

Dan WOZNIAK, Fred Neubecker; Robert Aumiller;
Arthur Barber, Defendants-
Appellees.

No. 99-1720.

May 23, 2000.

Before MOORE and GILMAN, Circuit Judges;
MCKEAGUE, District Judge . [FN*]

> FN* The Honorable David W. McKeague,
> United States District Judge for the
> Western District of Michigan, sitting
> by designation.

ORDER

**\*\*1** Thaddeus-X appeals a district court order dismissing his civil rights action filed pursuant to 42 U.S.C. § 1983. The case has been referred to a panel of the court pursuant to Rule 34(j)(1), Rules of the Sixth Circuit. Upon examination, this panel unanimously agrees that oral argument is not needed. See Fed. R.App. P. 34(a).

Seeking monetary relief, Thaddeus-X sued a Michigan correctional officer, Dan Wozniak, in his official and individual capacities, alleging that Wozniak retaliated against him for writing grievances and violated his First and Eighth Amendment rights. In an amended complaint, Thaddeus-X sued three more correctional employees, Neubecker, Barber, and Aumiller, alleging that these defendants also retaliated against him and violated his First and Eighth Amendment rights. The magistrate judge recommended granting summary judgment for defendant Wozniak on all claims, except for a claim of retaliatory cell transfer. The district court adopted

this recommendation in part, rejected the recommendation as to the retaliatory transfer claim, and granted summary judgment to Wozniak on all claims. The magistrate judge next issued another report, in which he recommended granting summary judgment to the remaining defendants on all claims. After reviewing Thaddeus-X's objections to this report, the district court adopted the report and recommendation, granted summary judgment to the remaining defendants, and dismissed the case. Thaddeus- X has filed a timely appeal

We initially note that Thaddeus-X did not fully exhaust his administrative remedies prior to filing his federal suit, as is required under 42 U.S.C. § 1997e(a) . See Freeman v. Francis, 196 F.3d 641, 645 (6th Cir.1999). While we would normally remand this case to the district court for dismissal without prejudice, see id ., it appears from the record that Thaddeus-X has now fully exhausted his administrative remedies as to the claims in his complaint and that he would be able to re-file his complaint in a timely manner. See Mich. Comp. Laws § 600.5856; Sherrell v. Bugaski, 169 Mich.App. 10, 17 (1988); Meda v. City of Howell, 110 Mich.App. 179, 182-83 (1981). Since the district court has already addressed the merits of Thaddeus-X's claims, we choose to review the merits of the case at this time, rather than requiring the district court to undertake the redundant exercise of again discussing the merits upon re-filing of the complaint.

Upon review, we conclude that the district court properly granted summary judgment for the defendants. This court renders de novo review of district court orders granting summary judgment. See Lucas v. Monroe County, 203 F.3d 964, 971 (6th Cir.2000). Summary judgment is proper if no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. See id. The moving party has the burden of showing an absence of evidence to support the non-moving party's case. See Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir.2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. See id. The mere existence of a scintilla of evidence to support the plaintiff's position will be insufficient; rather, evidence must exist on which the jury can reasonably find in favor of the

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

plaintiff. See Morris v. Oldham County Fiscal Court, 201 F.3d 784, 788 (6th Cir.2000).

**2 Thaddeus-X's chief argument is that the district court applied the wrong standard in analyzing his retaliation claims; in essence, he is arguing that the district court wrongly concluded that the defendants were entitled to qualified immunity for his retaliation claims, as analyzed under this court's recent decision in Thaddeus-X v. Blatter, 175 F.3d 378 (6th Cir.1999) (en banc). However, we determine that the district court properly concluded that the defendants were entitled to qualified immunity. The affirmative defense of qualified immunity shields government officials from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Gardenhire v. Schubert, 205 F.3d 303, 310-11 (6th Cir.2000). When determining whether a right is "clearly established," the court must look to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits. See Gardenhire, 205 F.3d at 311. The contours of the right has to be sufficiently clear that a reasonable official would understand that what he is doing violates that right. See Anderson v. Creighton, 483 U.S. 635, 640 (1987); Gardenhire, 205 F.3d at 311.

The law concerning a prisoner's retaliation claim was not "clearly established" prior to the Thaddeus-X en banc decision. In that decision, the court noted that this circuit previously had applied inconsistent analyses for these retaliation claims, often requiring a prisoner to demonstrate that the defendant's conduct "shocks the conscience." See Thaddeus-X, 175 F.3d at 387-88. The court concluded that this analysis was in conflict with Supreme Court precedent and no longer the law of this circuit. See id. at 388. The court also noted that this conflicting case law was not unique to this circuit. See id. at 388 n. 4. This court has repeatedly referred to the Thaddeus-X decision as clarifying the law concerning retaliation claims. See Herron v. Harrison, 203 F .3d 410, 414 (6th Cir.2000); Shehee v. Luttrell, 199 F.3d 295, 301 n. 5 (6th Cir.1999), petition for cert. filed (Feb. 28, 2000) (No. 99- 8837); Mattox v. City of Forest Park, 183 F.3d 515, 521 (6th Cir.1999). Consequently, the analysis for retaliation claims, as set forth in Thaddeus- X, was not "clearly established" at the time of the defendants' alleged improper conduct in this case and the district court properly concluded that they are entitled to qualified immunity for claims

based on that decision. Furthermore, and contrary to Thaddeus-X's argument, the district court properly examined whether the defendants violated the law that was "clearly established" at the time of the alleged improper conduct, i.e., the "shock the conscience" analysis. The district court properly concluded that the defendants were entitled to qualified immunity on the retaliation claims.

**3 The district court also properly dismissed Thaddeus-X's Eighth Amendment claims. In his complaints, Thaddeus-X alleged that the defendants subjected him to unconstitutional conditions of confinement and were deliberately indifferent to his serious medical needs. However, we note that, in his objections to the magistrate judge's report that recommended granting summary judgment for defendants Neubecker, Barber, and Aumiller, Thaddeus-X only raised a conclusory, one-sentence objection to the recommendation on his Eighth Amendment claims. This court requires litigants to file specific and timely objections to a magistrate judge's report and recommendation under 28 U.S.C. § 636(b)(1)(C) in order to preserve the right to appeal a subsequent order of the district court adopting that report. See Thomas v. Arn, 474 U.S. 140, 155 (1985) ; Willis v. Sullivan, 931 F.2d 390, 400-01 (6th Cir.1991). The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object. See Miller v. Currie, 50 F.3d 373, 380 (6th Cir.1995). Consequently, Thaddeus-X has waived review of his Eighth Amendment claims as to defendants Neubecker, Barber, and Aumiller.

As to Thaddeus-X's Eighth Amendment claims against defendant Wozniak, they are without merit. Thaddeus-X alleges that the defendant subjected him to deplorable and unconstitutional conditions of confinement, which resulted in difficulty eating and sleeping. He also alleges that the defendant deprived him of his HIV medication for two days and, because of this action, he was "very sick." However, Thaddeus-X does not allege that he suffered any actual physical injury as a result of the defendant's actions. 42 U.S.C. § 1997e(e) requires a prisoner to show that he suffered physical injury to successfully bring an Eighth Amendment claims. See Harper v. Showers, 174 F.3d 716, 719-20 (5th Cir.1999) (Eighth Amendment conditions of confinement claim); Perkins v. Kansas Dept. of Corrections, 165 F.3d 803, 807 (10th Cir.1999) (Eighth Amendment medical claim); Zehner v. Trigg, 133 F.3d 459, 461 (7th Cir.1997) (Eighth Amendment conditions of

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

215 F.3d 1327 (Table)
**(Cite as: 215 F.3d 1327, 2000 WL 712383, \*\*3 (6th Cir.(Mich.)))**

confinement claim). To meet this requirement, Thaddeus-X must show that he suffered more than de minimis injury. See Harper, 174 F.3d 719. However, he has not made this showing. While Thaddeus-X argues that § 1997e(e) should not apply to his case, the provisions of the Prison Litigation Reform Act apply to all prisoner cases filed on or after April 26, 1996, the Act's effective date. See White v. McGinnis, 131 F.3d 593, 595 (6th Cir.1997); Wright v. Morris, 111 F.3d 414, 417 (6th Cir.1997). Thaddeus-X's initial complaint was filed in February 1997, well after the effective date of the Act.

Accordingly, this court affirms the district court's judgment. See Rule 34(j)(2)(C), Rules of the Sixth Circuit.

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

FILED
WILLIAMSPORT

OCT 19 2000

PER ____ K.F.
DEPUTY CLERK

STEVEN LAVIGNE,          :

          Plaintiff      :      No. 4:CV-98-0703

vs.                      :      Complaint Filed 04/28/98

                         :
JOSEPH ZODA, ET AL.,     :      (Judge Muir)

          Defendants     :      (Magistrate Judge Durkin)

ORDER

October 19, 2000

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

On April 24, 1998, Steven Lavigne instituted this action in
which he seeks damages arising out of the Defendants' alleged
violation of his Eighth Amendment rights by using excessive force
upon him.  Lavigne is proceeding pro se and in forma pauperis.
The Defendants are four officials and employees at the United
States Penitentiary at Allenwood in White Deer, Pennsylvania.
This case was assigned to us but referred to Magistrate Judge
Raymond J. Durkin for preliminary consideration.  The background
of this case up to June 12, 2000, is set forth in our order
issued on that date.

On June 30, 2000, the Defendants filed a motion for summary
judgment in which they contend that Lavigne has not exhausted his
administrative remedies.  After that motion was fully briefed, on
August 16, 2000, Magistrate Judge Durkin issued a report
recommending that the Defendants' motion be granted.

On September 7, 2000, Lavigne timely filed objections to
that report and recommendation.  Although he failed to file a
separate supporting brief, the Defendants filed an opposing brief
on September 20, 2000.  Lavigne's reply brief was due on October
10, 2000, and he chose to file none.  The matter is ripe for
disposition.

When objections are filed to a report of a magistrate judge,
we make a _de novo_ determination of those portions of the report
or specified proposed findings or recommendations made by the
magistrate judge to which there are objections. United States vs.
Raddatz, 447 U.S. 667 (1980); 28 U.S.C. §636(b)(1); M.D. Pa.
Local Rule 72.31.

Summary judgment is appropriate only when there is no
genuine issue of material fact which is unresolved and the moving
party is entitled to a judgment as a matter of law. Fed. R. Civ.
P. 56(c).  Summary judgment should not be granted when there is a
disagreement about the facts or the proper inferences which a
fact finder could draw from them. Peterson v. Lehigh Valley Dist.
Council, 676 F.2d 81, 84 (3d Cir. 1982).  "When a motion for
summary judgment is made and supported as provided in ...[Rule
56], an adverse party may not rest upon mere allegations or
denials of the adverse party's pleading...." Fed. R. Civ. P.
56(e).

Initially, the moving party has a burden of demonstrating

2

the absence of a genuine issue of material fact. Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986).  This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial. Id. at 325.

Rule 56 provides that, where such a motion is made and properly supported, the adverse party must show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).  The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor. Celotex Corporation vs. Catrett, 477 U.S. 317, 322-23 (1986).

The Defendants' motion is based strictly on the narrow issue of whether Lavigne has exhausted his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).[1]  In Booth vs. Churner, 206 F.3d 289 (3d Cir. 2000), the Court of Appeals for the Third Circuit held for the first time that the exhaustion requirement in the Prison Litigation

---

[1]That section provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Reform Act applies to actions based on the alleged use of excessive force. Id., at 291.

The evidentiary materials submitted by the Defendants establish that Lavigne did not exhaust his administrative remedies before he filed this action.  Lavigne has not challenged that fact in either his brief opposing the Defendants' motion for summary judgment or his objections to the Magistrate Judge's report and recommendation.  Instead, Lavigne primarily asserts that summary judgment for his failure to exhaust available remedies is inappropriate because of numerous alleged circumstances which arose after the filing of this lawsuit.[2] None of those allegations is relevant because they do not pertain to Lavigne's failure to exhaust his administrative remedies.

Lavigne's only comment in his objections with respect to the exhaustion requirement is that it would be futile because money damages are not available to him pursuant to the inmate grievance system.  The Court of Appeals for the Third Circuit has explicitly rejected that argument. Nyhuis vs. Reno, 204 F.3d 65, 72 (3d Cir. 2000).

The undisputed facts demonstrate that Lavigne did not exhaust his administrative remedies before filing this lawsuit.

---

[2]Those allegations include his failure to receive our order of June 12, 2000, and "that this litigation was hindered by actions of his cell mate and staff members" where he is currently incarcerated. (Document 88, p. 4.)

4

The Court of Appeals for the Third Circuit has held that such exhaustion is mandatory and that the failure to do so requires the dismissal of this action without prejudice. Id., at 300.

The Defendants contend that they are entitled to summary judgment in this case, as opposed to the dismissal of the action without prejudice, because Lavigne has "procedurally defaulted" the claims which gave rise to this action. The Magistrate Judge agreed with their argument that Lavigne is no longer able to pursue any administrative claim based on the allegations in this action because such a claim would be time-barred.

The only authority which the Defendants cite in support of that proposition is case law dealing with habeas corpus issues. Our limited research of the issue indicates that the principle of a "procedural default" exists exclusively within the context of post-conviction relief petitions and motions. Our view is that the principle of a "procedural default" does not apply in a civil rights action for damages.[3]

However, at this point we need not predict the manner in

---

[3] The time limit within which an administrative complaint shall be filed was addressed somewhat obliquely in dicta in Nyhuis, which was a civil rights action. The Bureau of Prisons' regulations require an administrative complaint to be filed within 20 days after the event at issue in the complaint. 28 C.F.R. §§ 542.14(a). The Court of Appeals first noted that the applicable regulations allow for extensions of the deadlines "when the inmate demonstrates a good reason for the delay." Nyhuis, 204 F.3d at 77 n. 12 (citing 28 C.F.R. §§ 542.14(b), 542.15(a)).

5

which the Bureau of Prisons will consider any potential
administrative claim filed by Lavigne.  The two controlling
cases, <u>Booth</u> and <u>Nyhuis</u>, convince us that the case should be
dismissed without prejudice. <u>See</u> Ahmed vs. Sromovski, et al., 103
F. Supp. 2d 838 (E.D. Pa. 2000)(Brody, J.)(dismissing complaint
without prejudice where defendants filed motion for summary
judgment based on inmate's failure to exhaust administrative
remedies).

We will adopt Magistrate Judge Durkin's report to the extent
that it is based on Lavigne's failure to exhaust administrative
remedies.  We decline to adopt the recommendation that summary
judgment be entered in favor of the Defendants because such a
conclusion would be based on a prediction of the manner in which
the Bureau of Prisons will address Lavigne's potential
administrative claims.

NOW, THEREFORE, IT IS ORDERED THAT:

1.    Lavigne's objections to the report and recommendation
      of Magistrate Judge (Document 88) are overruled.

2.    Magistrate Judge Durkin's report and recommendation is
      adopted in large part.

3.    The Defendants' motion for summary judgment (Document
      80) is granted in part and denied in part as provided
      in this order.

4.    Lavigne's complaint (Document 1) is dismissed without

6

prejudice.

5. The Clerk of Court shall send a copy of this order to Magistrate Judge Durkin.

6. The Clerk of Court shall close this case.

7. Any appeal from this order by Lavigne will be deemed frivolous, without probable cause, and not taken in good faith.

_____
MUIR, U.S. District Judge

MM:ga

7

Case 1:00-cv-01334-WWC    Document 14    Filed 01/23/2001    Page 39 of 56

(Cite as: 211 F.3d 1269, 2000 WL 571948 (6th Cir.(Tenn.)))
**C**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA6 Rule 28 and FI CTA6 IOP 206 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Sixth Circuit.

Randy Dale HILL, Plaintiff-Appellant,
v.
Charles JONES, Warden; Mattie Snow; Elsie Boles; Faus Capobianco, M.D.; Maninder Singh, M.D.; Pepito Y. Salcedo, M.D., Defendants-Appellees.

No. 98-5100.

May 3, 2000.

Before NORRIS and GILMAN, Circuit Judges; HOOD, District Judge. [FN*]

> FN* The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

ORDER

**\*\*1** Randy Dale Hill appeals a district court order dismissing his civil rights action filed under 42 U.S.C. § 1983. The case has been referred to a panel of the court pursuant to Rule 34(j)(1), Rules of the Sixth Circuit. Upon examination, this panel unanimously agrees that oral argument is not needed. See Fed. R.App. P. 34(a).

Seeking monetary, declaratory, and injunctive relief, Hill sued several Tennessee correctional and medical personnel in their individual and official capacities, alleging that the defendants failed to protect him from an attack by another inmate and did not provide him with adequate medical care. Over Hill's objections, the district court adopted the magistrate judge's report and recommendation and granted summary judgment for the defendants. Hill has filed a timely appeal.

We initially conclude that the district court should have dismissed Hill's failure to protect claim without

prejudice because he did not exhaust any available administrative remedies for this claim. Under 42 U.S.C. § 1997e(a), a prisoner must exhaust all of his available administrative remedies before filing a § 1983 action in federal court, see Brown v. Toombs, 139 F.3d 1102, 1103-04 (6th Cir.), cert. denied, 525 U.S. 833, 119 S.Ct. 88, 142 L.Ed.2d 69 (1998), and the prisoner has the burden of demonstrating that he has exhausted these remedies. See id. at 1104. Before the district court adjudicates any claim set forth in the plaintiff's complaint, the court must determine that the plaintiff has complied with this exhaustion requirement. See id. Although money damages may not be available through the prison grievance process, Hill must still exhaust these state remedies because the prison has an administrative system that will review his complaints. See Freeman v. Francis, 196 F.3d 641, 643 (6th Cir.1999); Wyatt v. Leonard, 193 F.3d 876, 878-79 (6th Cir.1999). The prisoner must exhaust his remedies as to all claims arising from his confinement, including excessive force, equal protection, and other constitutional claims. See Hartsfield v. Vidor, 199 F.3d 305, 308 (6th Cir.1999) ; Freeman, 196 F.3d at 643-44. To establish that he has exhausted his administrative remedies prior to filing suit, a prisoner should attach to his § 1983 complaint any decision demonstrating the administrative disposition of his claims. See Wyatt, 193 F.3d at 878; Brown, 139 F.3d at 1104.

Hill has not met his burden of demonstrating that he exhausted his available administrative remedies for his failure to protect claim. Hill filed his complaint on November 15, 1996, alleging that he was attacked by another inmate on January 2, 1996, and that the defendants were deliberately indifferent to this threat to his personal safety. While the administrative exhaustion requirement set forth in § 1997e(a) applies to Hill's case because he filed his complaint after April 26, 1996, the effective date of the Prison Litigation Reform Act (PLRA), see Brown, 139 F.3d at 1104, he is required only to substantially comply with this requirement because the events giving rise to his claim occurred before the effective date of the PLRA. See Wolff v. Moore, 199 F.3d 324, 327-29 (6th Cir.1999); Wyatt, 193 F.3d at 879-80.

**\*\*2** Nonetheless, Hill did not substantially comply with the exhaustion requirement. The record does not reveal that Hill ever filed any grievance, complaint, or other notice with prison officials concerning their

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

alleged failure to protect him from the attack. Since no evidence exists that Hill made a good faith effort to provide the prison administration with notice of his complaint, see Wolff, 199 F.3d at 327; Wyatt, 193 F.3d at 880, this claim must be dismissed for failure to exhaust administrative remedies and remanded to the district court for dismissal without prejudice. See Hartsfield, 199 F.3d at 310; Freeman, 196 F.3d at 645. We note that Hill properly exhausted his administrative remedies for his remaining claim.

Upon review, we conclude that the district court properly granted summary judgment for the defendants on Hill's medical claim. This court renders de novo review of a district court order granting summary judgment. See Davis v. Sodexho, Cumberland College Cafeteria, 157 F.3d 460, 462 (6th Cir.1998). Summary judgment is proper if no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. See id. The moving party has the burden of showing an absence of evidence to support the non-moving party's case. See EEOC v. Prevo's Family Mkt., Inc., 135 F.3d 1089, 1093 (6th Cir.1998). Once the moving party has met its burden of production, the non-moving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. See Hall v. Tollett, 128 F.3d 418, 422 (6th Cir.1997). The mere existence of a scintilla of evidence to support the plaintiff's position will be insufficient; rather, evidence must exist on which the jury can reasonably find in favor of the plaintiff. See id.

The defendants have met their burden of showing an absence of evidence to support Hill's medical claim. Hill alleges that, shortly after the attack by the inmate, he was operated on by Dr. Bennett at the Nashville Memorial Hospital, who recommended to the defendant medical personnel that they schedule Hill for additional surgery as soon as possible. Nonetheless, he asserts that a lengthy delay followed before he received additional surgery and this delay violated his Eighth Amendment rights. To establish a violation of his Eighth Amendment rights resulting from a denial of medical care, Hill must show that prison officials were deliberately indifferent to his serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Brooks v. Celeste, 39 F.3d 125, 127 (6th Cir.1994). A prison official is deliberately indifferent when he acts with criminal recklessness, a state of mind that requires that he act with a conscious disregard to a

substantial risk of serious harm to the prisoner. See Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Complaints of malpractice or allegations of negligence are insufficient to entitle a plaintiff to relief. See Estelle, 429 U.S. at 105-06. A prisoner's difference of opinion regarding treatment does not rise to the level of an Eighth Amendment violation, see id, at 107, and, where the prisoner has received some medical attention and now disputes the adequacy of that treatment, the federal courts are reluctant to secondguess prison officials' medical judgments and to constitutionalize claims which sound in state tort law. See Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir.1976).

**3 The defendants have demonstrated that they were not deliberately indifferent to Hill's serious medical needs. Hill acknowledges that he received regular medical examinations and treatment after his surgery. His chief complaint appears to be that the defendant medical personnel did not follow Dr. Bennett's recommendation and schedule him for additional surgery shortly after the original surgery. However, a disagreement between medical personnel over the appropriate course of treatment is insufficient to establish an Eighth Amendment claim. See Keeper v. King, 130 F.3d 1309, 1314 (8th Cir.1997); Vaughan v. Lacey, 49 F.3d 1344, 1346 (8th Cir.1995). Since Hill received significant medical treatment from the defendants, his disagreement as to the adequacy of that treatment does not amount to an Eighth Amendment violation.

Lastly, Hill argues that the district court improperly denied his motion to amend his complaint. While this court generally reviews a district court's denial of a motion to amend for an abuse of discretion, the court renders de novo review when the district court bases its decision on the legal conclusion that the proposed amendment would be futile. See Hahn v. Star Bank, 190 F.3d 708, 715-16 (6th Cir.1999), cert. denied, --- U.S. ----, 120 S.Ct. 1423, 146L.Ed.2d 314 (2000). Hill sought to add the medical director of the facility where he was incarcerated as a defendant to his suit, but he alleges no additional facts against this individual than previously set forth against the original defendants. The district court properly denied the motion because Hill's underlying medical claim is meritless and the proposed amendment would have been futile.

Accordingly, this court affirms the district court's grant of summary judgment on Hill's medical claim,

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

211 F.3d 1269 (Table)
**(Cite as: 211 F.3d 1269, 2000 WL 571948, \*\*3 (6th Cir.(Tenn.)))**

vacates the court's grant of summary judgment on the failure to protect claim, and remands that claim for dismissal without prejudice. See Rule 34(j)(2)(C), Rules of the Sixth Circuit.

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

COPY F●R OUR
INFORMATION 

JUN 04

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ABEL ROJAS                           :

    Plaintiff                    :

    vs.                          : CIV.NO. 92-1514
PHYSICIANS ASSISTANT WILLIAMS
and ARNOLD REYES, Director,
Health Care, USP Lewisburg,
                                     :

    Defendants

FILED
SCRANTON

MAY 27 1993

------------------------------------------

## MEMORANDUM AND ORDER

Plaintiff, Abel Rojas, an inmate at the United States

Penitentiary, Lewisburg, Pennsylvania (hereinafter USP Lewisburg)

filed this Bivens[1]-styled complaint pursuant to 28 U.S.C. § 1331

on October 26, 1992. (Doc.No. 1). Both Defendants are members

of the USP-Lewisburg medical staff. The Defendants in this

action are Roland Williams, a Physician's assistant and Arnold

Reyes, the Health Services Administrator. The Plaintiff alleges

the Defendants violated his Eighth Amendment right to be free

from cruel and unusual punishment when the Defendants allegedly

were deliberately indifferent to Plaintiff's medical needs.

Defendants' filed a Motion to Dismiss or in the alternative

for Summary Judgment, with a brief in support. (Doc.No. 7, 10 &

11). The Plaintiff has filed a Motion to demonstrate that a

genuine issue for trial exist and Plaintiff request for jury

trial. (Doc.No. 8). This Court will construe Plaintiff's Motion

---

1. See Bivens v. Six Unknown Named Agents of the Federal
Bureau of Narcotics, 403 U.S. 388, (1971).

AO 72A

as a Motion in Opposition to the Defendants' Motion for Summary Judgment.

## BACKGROUND

Plaintiff, was transferred from USP Atlanta to USP-Lewisburg on September 15, 1992. Upon arrival Plaintiff has been housed in the Special Housing Unit (SHU) at USP Lewisburg. Plaintiff alleges he told Defendant Williams while he was making his rounds at the SHU that he was in pain and he had a medical order from the doctor at another prison for a back brace. Plaintiff further states that after he told Defendant Williams the medical order was inside his property bag, Defendant Williams allegedly told him, "Don't Worry about it, I'll take care of it." Plaintiff alleges he spoke with Defendant Williams again on September 21, 22, and 23 about his back brace and back pain. However, Plaintiff states that Defendant Williams told him he would have to wait.(Doc.No. 1, para. 9).

On September 25, 1992, Plaintiff alleges he spoke with Defendant Reyes while he was making his rounds in Administrative Segregation. Plaintiff alleges he told Defendant Reyes he had pain in his back and that Plaintiff had a "prescription for a lumbro sacral back brace". Plaintiff alleges that Defendant Reyes told him he would have to check it out. (Doc.No. 1, para. 13).

On October 6, 1992, Plaintiff alleges he obtained a copy of his medical order and showed it to Defendant Williams who stated Plaintiff would have to see an orthopedic doctor.

2

Plaintiff alleges the Defendants violated his Eighth Amendment right when both were deliberately indifferent to his needs.  In relief, Plaintiff seeks $8,000.00 in compensatory damages, $8,000.00 in punitive damages and $2,000.00 in nominal damages from each Defendant.  Plaintiff also seeks attorney fees and court costs, and "such other and further relief this court deems just and proper."

### DISCUSSION

Summary judgment is required where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).  Although the "burden to demonstrate the absence of material fact issues remains with the moving party regardless of which party would have the burden of persuasion at trial," <u>Levenios v. Stern Entertainment</u>, 860 F.2d 1227, 1229 (3d Cir. 1988)(internal quotation marks and citation omitted), the moving party's "burden" under Rule 56(c) "is discharged by 'showing'- that is, pointing out to the District Court- that there is an absence of evidence to support the non-moving party's case." <u>Celotex</u>, 477 U.S. at 325.

A non-moving party may not "rest upon mere allegations, general denials or...vague statements ..." <u>Quiroga v. Hasbro, Inc.</u>, 934 F.2d 497, 500 (3rd Cir.), <u>cert. denied</u>, 112 S.Ct. 376 (1991). If the non-moving party's evidence "is merely colorable,...or is not significantly probative,... summary

3

AO 72A
(Rev. 8/82)

judgment may be granted." <u>Gray</u>, 957 F.2d 1078 (quoting <u>Anderson</u>, 477 U.S. at 249-50).

Defendants challenge the adequacy of Plaintiff's claim that they deprived Plaintiff of his Eighth Amendment right.  An inquiry into a prisoner's constitutional right to receive medical care begins with the Supreme Court's seminal decision in <u>Estelle</u> <u>v. Gamble</u>, 429 U.S. 97 (1976).  The Court outlined that in order to state an Eighth Amendment claim for denial of medical care, the Plaintiff must prove specific facts which clearly demonstrate that the Defendants showed deliberate indifference to the Plaintiff's serious medical needs.  Such indifference can be shown by the way a prison doctor treats a prisoner's serious medical needs, or by the doctor's intentional denial or delay or access to medical care or intentional delay with prescribed treatment, however, inadvertent failure to provide medical care is not a violation of the Eighth Amendment.  <u>Id</u>. at 104-05.

The Third Circuit has interpreted the standard enunciated in <u>Estelle</u> as encompassing a two-pronged test: "it requires deliberate indifference on the part of the prison officials and it requires the prisoner's medical needs to be serious". <u>Monomouth County Correctional Institutional Inmates v. Lanzaro</u>, 834 F.2d 326 (3d Cir. 1987), <u>cert</u>. <u>denied</u>. 486 U.S. 1006 (1988) (citing <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754 (3d Cir. 1979))).  Defendants in the present case argue the Plaintiff failed to meet the serious medical need requirement

4

of the <u>Monmouth County</u> and failed to demonstrate deliberate
indifference.

It is well settled that not every prisoner complaint of
inadequate medical care rises to the level of a constitutional
violation. <u>White v. Napoleon</u>, 897 F.2d 103, 108-09 (3d Cir.
1990). In fact, "mere medical malpractice cannot give rise to a
violation of the Eighth Amendment." <u>Id</u>. Indeed, prison
authorities are accorded considerable latitude in the diagnosis
and treatment of prisoners. See <u>Inmates of Allegheny County Jail
v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979); See <u>Durmer v.
O'Connor</u>, 1993 W.L. 88623 (3rd Cir. (N.J.)) (quoting <u>White v.
Napoleon</u>, 897 F.2d at 110 (3d Cir. 1990) ("Certainly, no claim is
presented when a doctor disagrees with the professional judgment
of another doctor. There may, for example be several ways to
treat an illness.").

In prevailing in an action for inadequate medical care, a
prisoner must show more than negligence; he must show deliberate
indifference on the part of the prison staff toward his serious
medical needs. See <u>Estelle</u> at 104-106. Deliberate indifference
is more than inadvertence or a good faith error; it is
characterized by "obduracy and wantonness." <u>Whitley v. Albers</u>,
475 U.S. 312, 319 (1986). The Third Circuit has held "that a
prison official is deliberately indifferent when he <u>knows or
should have known</u> of a sufficiently serious danger to an inmate.
<u>Young v. Quinlan</u>, 960 F.2d 351, 361 (3d Cir. 1992). (emphasis in
original). The Third Circuit stressed the words "should have

5

known" means "strong likelihood of harm must be so obvious that a
lay person would easily recognize the necessity of preventive
action", Young v. Quinlan, 960 F.2d at 361 (quoting Monmouth at
347). See also Farmer v. Carlson, 685 F.Supp. 1335, (M.D. Pa.
1988).   In short, district courts will "disavow any attempt to
second guess the propriety or adequacy or a particular course of
treatment...[which] remains in a question of sound professional
judgment." Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977).
Applying the above standard, the Court must determine whether
material issues of fact exist regarding the Defendants' alleged
deliberate indifference to Plaintiff's medical needs.

Defendant Williams.

A review of the record before the Court reveals that
Defendant Williams is employed as a physician's assistant in the
Health Services Department at USP-Lewisburg.  Defendant Williams,
in his own declaration, states he was assigned to make rounds
through the SHU during the time period from September 20, 1992,
through November 14, 1992.  During this rotation period he spoke
with and treated the Plaintiff at least five (5) times[2].  The
first meeting was an inmate screening upon Plaintiff's arrival at
USP-Lewisburg, where the Defendant noted Plaintiff complained of
lower back pain but did not mention a back brace, nor request
one. At the second meeting the Plaintiff again complained of

---

2.   The dates the Defendant dealt with the Plaintiff were
September 15, 1992, September 28, 1992, October 5, 1992, and
October 13, 1992 and October 22, 1992.

lower back pain.  At this time, Defendant Williams stated he
examined the Plaintiff but failed to find any point of tenderness
and determined the Plaintiff had a full range of motion in his
lower back.  Defendant Williams then prescribed medication,
Motrin, for the Plaintiff.  During the remaining three visits,
the Defendant refilled the Plaintiff's prescription for
medication, with the exception of the last visit on October 15,
1992, where the Defendant increased the dosage to twice the
amount originally prescribed.  (Doc.No. 11, exhibit 2).
Furthermore, Defendant Williams states he cannot recall the
Plaintiff speaking to him about a medical order authorizing him
to wear a back brace nor having such an order on file in the
medical department.  Defendant Williams also stated that the
Plaintiff was not only treated by him but also by other members
of the medical staff for a total of thirty-one (31) times in less
than a five month period.  (Doc.No. 11, exhibit 2).  This Court
also notes the Plaintiff has not established the seriousness of
his medical condition.  Farmer v. Carlson, 685 F. Supp. 1335,
1339 (M.D. Pa. 1988).  Plaintiff only illustrates he had a
medical order from another doctor for a back brace.  There is no
evidence in the record where Defendant Williams was deliberately
indifferent to Plaintiff's serious medical needs.  At best, even
if the Defendant was told that Plaintiff had a prescription for a
back brace as the Plaintiff alleges, the Defendant's conduct did
not rise to the level of a constitutional violation as set by
this Circuit in Young v. Quinlan, supra.  As this Court earlier

7

said, "prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d at 762 (3rd Cir. 1979).

The Plaintiff, in response, has submitted declarations from two other inmates, Louis Sheptin and Albert Rapalo, who state they heard the Plaintiff ask Defendant Williams for a back brace. However, there is no evidence in either declaration where Defendant Williams acted intentionally to deprive Plaintiff of the back brace. In the absence of such evidence of intent, "no reasonable trier of fact could conclude that a constitutional violation occurred, i.e., that staff acted with deliberate indifference to a risk of serious personal injury". <u>Bartsch v. Federal Bureau of Prisons</u>, Nos. 92-7007 and 92-7090 (3d Cir. August 10, 1992)(unpublished).[3] Accordingly, the Plaintiff's claims against Defendant Williams are dismissed.

<u>Defendant Reyes</u>.

Plaintiff's allegation against Defendant Reyes must also fail for the same reasons. Plaintiff alleges Defendant Reyes was deliberately indifferent to his medical needs because he should have known that Plaintiff's continued denial of the back brace would cause Plaintiff additional suffering.

A review of the record reveals there is no evidence other than a mere allegation of deliberate indifference listed in the Plaintiff's complaint that establishes any liability against

---

3.  In <u>Bartsch</u>, intentional or deliberate conduct was not alleged and thus the complaint was dismissed.

8

Defendant Reyes.  The Plaintiff has failed to move beyond his
pleading with an additional evidence in the form of declarations
or affidavits to show where and how Defendant Reyes was
deliberately indifferent to him.

Defendant Reyes has submitted a declaration to this Court
where he declares that he does not recall speaking to the
Plaintiff about a back brace during the date in question.  Had
the Plaintiff made a request to him regarding a back brace,
Defendant Reyes states he would have referred it to the physician
assistant working within the prison.  Accordingly, there is an
absence of evidence to support the Plaintiff's claim against
Defendant Reyes and Plaintiff's claim is dismissed.

Administrative Remedies.

Plaintiff in the present case, in addition to requesting
money damages, also seeks "any other relief the court deems
just".  This type of relief should first have been attempted
through administrative channels prior to filing this case.
In the event the Plaintiff prevailed, this Court may have ordered
the Plaintiff to receive a back brace or other forms of medical
treatment.

It is firmly established that a federal prisoner must first
exhaust administrative remedies before seeking habeas corpus
relief in federal court. See Young v. Quinlan, 960 F.2d 351, 356
n.8 (3d Cir. 1992)[4];  Veteto v. Miller, 794 F.2d 98 (3d Cir.

---

4.  In McCarthy v. Madigan, ____ U.S. ___ 112 S.Ct. 1081
(1992), the United States Supreme Court ruled that an inmate
                                              (continued...)

1986); <u>United States ex rel. Sanders v. Arnold</u>, 535 F. 2d 848 (3d

Cir. 1976).  The United States Court of Appeals for the Third

Circuit, in <u>Lyons v. U.S. Marshals</u>, 840 F. 2d 202 (3d Cir. 1988),

identified the various policies underlying the exhaustion

requirement :

> First, adherence to the doctrine shows appropriate
> deference to Congress' decision, embodied in statute,
> that an independent administrative tribunal, and not
> the courts, should serve as the initial forum for
> dispute resolution. . .

> Second, the exhaustion doctrine illustrates respect for
> administrative autonomy by forbidding unnecessary
> judicial interruption of the administrative process.
> This autonomy allows the administrative tribunal to
> exercise its own discretion, apply its own special
> expertise, and correct its own errors, thereby
> promoting administrative responsibility and efficiency
> and minimizing the frequent and deliberate flouting of
> administrative processes which could weaken the
> tribunal's effectiveness.

> Third, the exhaustion requirement fosters judicial
> economy both by permitting the administrative tribunal
> to vindicate a complaining party's rights in the course
> of its proceedings, thereby obviating judicial
> intervention, and by encouraging the tribunal to make
> findings of fact on which courts can later rely in
> their decision making.

<u>Id.</u> at 205, citing <u>Republic Indus., Inc. v. Central Pa. Teamsters</u>

<u>Pension Fund</u>, 693 F. 2d 290, 293 (3d Cir. 1982).

The Bureau of Prisons has established a multi-tier system

whereby a federal prisoner may seek formal review of any aspect

of his imprisonment.  The procedures to be followed are set forth

---

4.   (...continued)
who filed a <u>Bivens</u> action seeking only money damages did not
need to exhaust administrative remedies. However, in this
situation, the Plaintiff has asked for "any other relief the
court deems just."

in 28 C.F.R. §§542.10-542.16 (1987).  First, "[i]nmates shall informally present their complaints to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for Administrative Remedy."  Id. §542.13(a).  Second, "[i]f an inmate is unable to informally resolve his complaint, he may file a formal written complaint, on the appropriate form, within fifteen (15) calendar days of the date on which the basis of the complaint occurred."  Id. §542.13(b).  The Warden has fifteen (15) days to respond.  See Id. §542.14.  Finally, if the inmate is not satisfied with the Warden's response, the response may be appealed (on the appropriate form) to the Regional Director within twenty (20) calendar days from the date of the Warden's response.  If the inmate is not satisfied with the Regional Director's response, that response may be appealed to the General Counsel within thirty (30) calendar days from the date of the Regional Director's response.  Id. §542.15.  The Regional Director and the General Counsel each have thirty days to respond.  See Id. §542.14.

A review of the Bureau of Prisons records indicates that Plaintiff has not filed any administrative remedies on this issue.  (Doc.No. 11, Exhibit 1, para. 4).  The Plaintiff is aware of the administrative procedure but did not file any action in this case.[5]

---

5.  The Plaintiff did file an administrative remedy on November 17, 1992, regarding disciplinary action taken against him.

Accordingly, the Plaintiff's complaint will be dismissed for failure to exhaust administrative remedies as required by law.

## CONCLUSION

Therefore, based on the above stated reasons, the Defendants Motion for Summary Judgment is GRANTED.  The Clerk of Court is directed to close the case file.

An appropriate Order follows.

_____
Richard P. Conaboy
United States District Judge

DATE: May 27, 1993

12

Case 1:00-cv-01334-WWC    Document 14    Filed 01/23/2001    Page 54 of 56

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

William BOYD, Plaintiff,

v.

DEPARTMENT OF CORRECTIONS, et al.,
Defendants.

No. CIV. A. 99-4987.

Aug. 2, 2000.

MEMORANDUM

BUCKWALTER

**\*1** Presently before the Court is the Defendants'
Motion to Dismiss. For the reasons stated below, the
Motion is Granted.

## I. BACKGROUND

Plaintiff William Boyd ("Boyd") is currently an
inmate at the State Correctional Institute at Graterford
("Graterford"). He was transferred to that institution
on January 11, 1999. Upon arrival, Boyd was
assigned into Administrative Custody ("AC") and
placed in the Restricted Housing Unit ("RHU"). Boyd
claims that the reasons for his not being assigned to
the general prison population were never adequately
explained to him. A Program Review Committee
("PRC") meeting was held on January 28, 1999
regarding his AC status. During this meeting, Boyd
was informed that he would have to sign a "tracking
agreement" in order to be released into the general
prison population, but he refused to do so. Boyd filed
an appeal of the PRC decision to Graterford
Superintendent Donald Vaughn ("Vaughn")
concerning his AC status on several dates during
1999, but Vaughn never responded to these
complaints. Boyd also appealed directly to Chief
Hearing Examiner Robert Bitner, but these appeals
were denied or ignored because of procedural
difficulties. In July, 1999, Defendant Russell Smith
explained to Boyd that he would not be released to
the general population based on a security report. At
a PRC hearing on September 2, 1999 the Plaintiff's
request to see the report was denied, although he was
told that it related to his history at other state
correctional institutes. Plaintiff also claims that he
requested to be transferred to a new cell, but his
repeated requests were denied by various Defendants.
Plaintiff was eventually assaulted and injured by his
cellmate, Keith Clayborne.

The Plaintiff seeks relief under § 1983 for violations
of his VIII and XIV Amendment rights. He also
asserts that he was falsely imprisoned, denied access
to the main law library and forced to do work he
found "humiliating". The Plaintiff seeks
compensatory damages of $25,000, punitive damages
of $100,000. He also seeks the following prospective
relief:

(1) access to the report which formed the basis of
his assignment to AC;

(2) a release to the general population or transfer
to a new facility; and

(3) a warning to his fellow inmates not to retaliate
against him.

## II. LEGAL STANDARD

When deciding to dismiss a claim pursuant to Rule
12(b)(6) a court must consider the legal sufficiency of
the complaint and dismissal is appropriate only if it is
clear that "beyond a doubt ... the plaintiff can prove
no set of facts in support of his claim which would
entitle him to relief." McCann v. Catholic Health
Initiative, 1998 WL 575259 at \*1 (E.D.Pa. Sep. 8,
1998) (quoting Conley v. Gibson, 355 U.S. 41, 45-46
(1957)). The court assumes the truth of plaintiff's
allegations, and draws all favorable inferences
therefrom. See, Rocks v. City of Philadelphia, (3d
Cir.1989). The Defendants here also raise
jurisdictional issues pursuant to Rule 12(b)(1). Such
motions also require the court to accept plaintiff's
allegations as true. See Mortensen v. First Federal
Savings and Loan Association, 549 F.2d 884, 891 (3d
Cir.1977).

## III. DISCUSSION

**\*2** Defendants seek to dismiss Plaintiff's claims
because Boyd has failed to exhaust his administrative
remedies. Prisoners must exhaust all administrative
remedies before initiating a lawsuit pursuant to 42
U.S.C. § 1983. 42 U.S.C. § 1997(e)  [FN1]; Nyhuis
v.. Reno, 204 F.3d 65 (3d Cir.2000). As the Third
Circuit stated in Jenkins v. Morton,

> FN1. "No action shall be brought with
> respect to prison conditions under section
> 1983 of this title, or any other Federal law,
> by a prisoner confined in any jail, prison, or
> other correctional facility until such
> administrative remedies as are available are
> exhausted".

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

[E]xhaustion promotes judicial efficiency in at least two ways. When an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted, or at least piecemeal appeals may be avoided. And, even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration, especially in a complex or technical factual context"
148 F.3d 257, 259 (3d Cir.1998), quoting McCarthy v. Madigan, 503 U.S. 140, 146 (1992).

Plaintiff has been incarcerated at Graterford since the treatment complained of arose, so the provisions of § 1997(e) apply to him. The Department of Corrections has adopted a Consolidated Inmate Grievance Review System. [FN2] As has been noted, the Department's inmate grievance system provides an adequate and meaningful legal remedy. See Waters v. Cmwlth, 509 A.2d 430, 433 (Pa.Cmwlth.1986).

> FN2. The Department maintains a prisoner grievance system which allows prisoners to seek review of problems which they experience during their period of incarceration. While the system is designed to provide for review and resolution of prisoner grievances at the most decentralized level possible, the system also provides for a review of the initial decision making and for possible appeal to the Department's central office. Copies of the grievance system procedures are made available to every prisoner under the Department's jurisdiction. See 37 Pa.Code § 93.9

Boyd never alleges that he filed grievances concerning some of the relief he seeks in the Amended Complaint. There is no dispute that he never grieved the protection received, the denial of access to the main law library or the refusal to provide the report which served as a basis for his assignment to RHU. Boyd does allege that he filed several appeals of his AC confinement in the RHU, but they were either denied or ignored. However, this was not part of the grievance procedure as required provided by DC-ADM-804. Boyd recognizes this, but essentially argues that attempting such a grievance would have been futile, considering the lack of attention his appeals had produced. However, futility does not excuse the exhaustion requirements under the Prison Litigation Reform Act ("PLRA"). See Nyhuis, 204 F.3d at 71. The PLRA requires an inmate to exhaust all administrative remedies prior to bringing a federal action challenging prison conditions, whether or not they provide the inmate with the relief the inmate says he or she desires in the federal action. Id. Therefore, since the Plaintiff has not alleged that he had pursued his administrative remedies to final review, his Amended Complaint will be dismissed.

Boyd can pursue his administrative remedies at SCI Graterford. If he is not satisfied with the result of such procedures, he may then refile a complaint in federal court. However, if Boyd's administrative remedies are now time-barred, the judgment of the Court will not be affected. It would be contrary to Congress's intent in enacting the PLRA to allow inmates to bypass the exhaustion requirement by declining to file administrative complaints and then claiming that administrative remedies are time-barred and thus not then available. See Wright v. Morris, 111 F.3d 414, 417 (6th Cir.1997); Marsh v. Jones, 53 F.3d 707 (5th Cir.1995) (District Court could dismiss prisoner's 1983 claims under § 1997(e) even when administrative relief is time-barred).

### IV. CONCLUSION

*3 The Plaintiff has failed to allege exhaustion of administrative remedies as required under § 1997(e). Therefore, the Amended Complaint is dismissed with prejudice.

An appropriate order follows.

### ORDER

AND NOW, this 2nd day of August, 2000, upon consideration of the Defendants' Motion to Dismiss (Docket No. 22), and the Plaintiff's Response thereto (Docket No. 30); it is hereby ORDERED that the Motion is GRANTED.

This case is marked CLOSED.

END OF DOCUMENT

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA


ROBERT LEON BUCKNER,        :
         Plaintiff     :
                  :
      v.           :  Civil No. 1:CV-00-1594
                  :  (Caldwell, J.)
DR. ANTHONY BUSSANICH, M.D.,  :
and DONALD ROMINE, Warden, USP, :
        Defendants   :

CERTIFICATE OF SERVICE BY MAIL

     The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

     That on January 29, 2001, she served a copy of the attached

BRIEF IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Williamsport, Pennsylvania.

Addressee:

Robert Leon Buckner
Reg. No. 33001-037
LEC Unit K01-009L
P.O. Box 2000
Lewisburg, PA 17837

                             _Michele E Lincalis_
                             MICHELE E. LINCALIS
                             Paralegal Specialist